IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAHKEE WIMBERLEY<br>7335 Dicks Avenue<br>Philadelphia, PA 19153<br><br>    Plaintiff,<br>v.<br><br>REMINGTON PHILLY EMPLOYERS,<br>LLC, d/b/a EMBASSY SUITES<br>9000 Bartram Avenue<br>Philadelphia, PA 19153<br>    and<br>REMINGTON HOSPITALITY, INC.,<br>d/b/a EMBASSY SUITES<br>14185 Dallas Parkway, Suite 1150<br>Dallas, TX 75254<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Yahkee Wimberley (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Remington Philly Employers, LLC and Remington Hospitality, Inc. (collectively, "Defendants"), both doing business as Embassy Suites. Plaintiff asserts violations of Title VII of the Civil Rights Act ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff contends he was subject to discriminatory and retaliatory mistreatment while employed (as explained *infra*) and that he was unlawfully terminated from his employment.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendants are deemed to reside where they are subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult female residing at the above-captioned address.

7. Remington Philly Employers, LLC ("Defendant RPE" where referred to individually) is a hospitality management company operating hotels in Philadelphia, such as the Embassy Suites (wherein Plaintiff was employed).

8. Remington Hospitality Inc. ("Defendant RH" where referred to individually) is a Dallas-based hotel management company founded in 1968. Defendant RH advertises managing a

2

portfolio of more than 130 hotels across more than 30 brands (including those operated by Defendant RPE). Defendant RH: (a) directly oversees operations in each hotel within its portfolio; (b) sets policies, revenue, budgets, policies, and operational expectations within each hotel; (c) hires, directs, and operates its portfolio hotels; (d) operates each hotel through overlapping and centralized human resources and leadership personnel; and (e) merely uses corporate names as formalities (such as Defendant RPE) for hotels in specific locations or regions.

9. Due to overlapping resources, management, advertisement, controls, benefits, directives, and other nationwide (joint and integrated) structures, Defendants are properly single, joint and/or integrated employers for all purposes in this lawsuit.

10. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a black (African American) male.

13. Plaintiff was employed by Defendants for over two (2) years (commencing in the timeframe of June 2022) until being terminated on or about September 4, 2024.

14. Plaintiff physically worked for Defendants at 9000 Bartam Avenue, Philadelphia, PA 19153. This location publicly advertises as "The Embassy Suites by Hilton Philadelphia Airport." This particular location of Defendants is a 5-story, 263-suite hotel located roughly one (1) mile from the Philadelphia airport.

15. Plaintiff was initially hired by Defendants as a houseman but was thereafter promoted on a few occasions. As of termination, Plaintiff held the position of Housekeeping (Floor) Supervisor.

16. In his supervisory role, Plaintiff typically oversaw 20-30 employees (inclusive of housekeepers, housemen, and laundry attendants).

17. In or about July of 2023, Plaintiff began being supervised by Shahriar Pasdar ("Pasdar"), a General Manager of Plaintiff's work location. Pasdar was newly hired by Defendants at this time.

18. Pasdar supervised Plaintiff during Plaintiff's last approximate year of employment. Pasdar is not black or African American and is upon information and belief of Persian origin (based upon his first and last name, as well as his schooling in Tehran).

19. During the second half of 2023 (and through part of 2024), Plaintiff was being directed by Pasdar to assume higher-level managerial duties consistent with that of an Assistant Manager and subsequently of an Executive Manager (as there was a long-term vacancy of Executive Manager).

20. By early 2024, Plaintiff has formed the opinion that Pasdar was racist. <u>Through the second half of 2023 and early 2024</u>:

   (a) Pasdar had made no less than 20 comments to Plaintiff about his "dreadlocks," hair, and about how Plaintiff's hair appeared. Plaintiff had long hair, but he wore his hair in braids, dreadlocks, and other culturally typical manners consistent with African American culture. Non-blacks also had long hair, but Pasdar was not making derogatory comments about or to them. He was telling Plaintiff "do something with your hair," "get it fixed," "tighten it up," and other similar offensive comments.

   (b) Pasdar kept telling Plaintiff to counsel or discipline black employees for issues Pasdar didn't counsel or discipline non-black employees. To provide just one of many examples, employees had to wear black pants. They often had a small (but visible) brand logo, a small line somewhere (such as near an ankle), or other minor deviation (from being 100% black). Pasdar would tell Plaintiff to counsel or

4

    discipline the black employees when non-black employees wore even more visible non-conformities but were not counseled or disciplined. There are many examples of this disparate type of directive, not just as to uniforms. This was a continuing occurrence in many respects (where black employees were held to a different standard).

(c) Pre-Pasdar, almost every team member was African American (or black). Post-Pasdar, the staffing shifted to only about 50% African American (or black). There was a significant change in demographics with a significant lessening of black personnel.

(d) Other employees were given pay increases associated with increased responsibilities or promotions. Plaintiff was functioning as an Assistant Manager and then as an Executive Director, but he was not given a temporary or permanent compensation increase. Plaintiff was also working tremendous hours per week to help Defendants.

(e) On at least a dozen occasions, Pasdar made a racially discriminatory joke, comment or stereotype in the presence of or to Plaintiff. When Plaintiff would be eating in the break area, Pasdar would make comments on numerous occasions such as "what, no chicken," "come on, I know you love chicken," or "what, no watermelon"? He also made other racially inappropriate or insensitive comments at times. Plaintiff is just providing some examples herein.

(f) Pasdar also talked to Plaintiff in an abrasive, condescending, and loud manner at times unlike how he would communicate with non-black team members.

(g) Pasdar made negative comments about black guests he would see referencing them as dirty or stating that room will require a lot of cleaning or attention. He did not do so about non-black guests.

21. In Paragraph 20 (above), Plaintiff only provides examples of how Plaintiff perceived Pasdar to be racially offensive or racially discriminatory. This is not intended to serve as an exhaustive explanation. Plaintiff will provide much more extensive information during ensuing litigation.

22. Beginning in the spring of 2024, Plaintiff had begun confronting Pasdar about what Plaintiff perceived to be blatant racial discrimination. In the spring of 2024, Plaintiff brought "racial" complaints to Pasdar at least 2 or 3 times.

23. Before the spring of 2024, Plaintiff had experiencing ongoing discrimination but had not been disciplined, admonished or warned of anything – and to the contrary – was continually being assigned higher leadership-level duties.

24. By June of 2024, Plaintiff estimates having made at least 5 or 6 racial complaints to Pasdar. Plaintiff was complaining that he was hearing racially offensive comments (about wanting to get rid of all black supervisors) from laundry attendants, and Plaintiff continued to complain that he and other black subordinates were being held to a racially discriminatory standards. Moreover, Plaintiff was telling Pasdar whether he intended it or not, his comments to or in front of Plaintiff were racially offensive.

25. In the timeframe of July 2024, Plaintiff was informed that he was removed from the work schedule during a particular week to investigate potential sexual harassment by him. This was pretextual and retaliatory.

26. Following the aforesaid sexual harassment investigation (and only after Plaintiff's attempts to find out his status), Plaintiff was informed he could resume working and that allegations of sexual harassment were unfounded due to a lack of evidence. But Plaintiff was given discipline because allegedly, during the investigation, Defendants' management noticed Plaintiff had sent emails that could be construed as rude. This was pretextual and retaliatory.

27. Between July – August of 2025, Pasdar was being unnecessarily aggressive and hostile in communications towards Plaintiff (more so than previously). During this time frame, Plaintiff was complaining of mistreatment and retaliation for his racial concerns. He did so to

Pasdar, Linda Brown (the newer Executive Manager), and Renee Berry ("Berry"), a "Remington Hospitality Human Resources Director."[1]

28. The work environment was so hostile towards Plaintiff that Plaintiff was being told things like: (a) you need to smile more in a disciplinary manner (despite Plaintiff always being upbeat and pleasant); (b) you can't be late to a meeting if Plaintiff was 1 – 2 minutes late from handling a work matter while others attending later were not admonished; and (c) he was being questioned about things he did, said or talked about as if Defendants were looking for any feigned rationale to discipline or terminate him. The late summer had turned into constant scrutiny and nitpicking of Plaintiff.

29. On or about September 1, 2024, Plaintiff was directed by Defendants' management not to return to work and informed he would be contacted.

30. On or about September 4, 2024, Plaintiff was contacted by Defendants' management and informed he was terminated. The sole reason Plaintiff was given for his termination (**on this date**) was that he allegedly entered a guest's room improperly. The particular guest was supposed to have vacated the room, and all Plaintiff did was follow normal protocol(s) and knock and attempt to enter when there was no response. When the guest responded, Plaintiff ceased attempting to open the door.[2]

31. Plaintiff's termination rationale was absolutely absurd and lacking in credibility, as guests complained about all personnel within the location, inclusive of management (consistently).

---

[1] *See* https://www.linkedin.com/in/renee-berry-bbb6bb78/ (Berry publicly representing she is a Human Resources Director for "Remington Hospitality" overseeing Embassy Suites employees).

[2] This general scenario has likely occurred to anyone and everyone who has ever been a guest in a hotel with cleaning personnel.

They were not terminated unlike Plaintiff (to the extent the guest raised such a gripe as to Plaintiff). Plaintiff heard significant (and many times legitimate) complaints about staff and supervisors who were not disciplined or terminated by Defendants' leadership. In fact, Defendants' location is littered with hundreds of *seriously negative* online reviews as well complaining about specific departments and specific personnel (not resulting in termination or discipline).

32. After years of extremely long weeks, multiple promotions, picking up slack for personnel who called out, unwavering dedication, and no progressive discipline for such an issue, Plaintiff was terminated supposedly for the aforesaid reason (which lacks in all plausibility).

33. Presumably because the reason for Plaintiff's termination was so objectively unbelievable, Defendants responded to Plaintiff's unemployment benefit claim (to the Department of Labor) with a litany of entirely different reasons for his termination from employment - - including that Plaintiff was terminated for "sexual harassment" (an issue that was unfounded months earlier), being "absent" from work (despite that Plaintiff worked tremendous overtime and was not absent), tardiness (despite that Plaintiff was not tardy), and Defendants appeared to indicate a factor in Plaintiff's termination was possible incarceration (of which there was no basis to identify, as Plaintiff had no criminal interactions, arrests, or incarceration).[3]

34. Plaintiff was an exemplary employee who was actually and/or functionally promoted numerous times. Prior to Plaintiff's complaints of racial discrimination on his own behalf and on behalf of other employees, Plaintiff was never warned, disciplined, suspended, or subjected to such hostility. Plaintiff experienced clear and unequivocal retaliation as outlined in this lawsuit.

---

[3] Defendants' representations to the Department of Labor in reference to Plaintiff's application for unemployment benefits undermine the rationale Plaintiff was given as of actual termination.

## Count I
### Violations of 42 U.S.C. § 1981
### (Racial Discrimination & Retaliation)
### - Against Both Defendants -

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff seeks relief for the following adverse actions:

    (1) For being subjected to a hostile work environment;

    (2) For being denied promotions and/or pay increases;

    (3) For being given discipline, suspension, and/or job removals (prior to his ultimate termination); and

    (4) For being terminated from his employment.

37. The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his concerns of racism (that he expressed numerous times) constitute violations of 42 U.S.C. § 1981.

## Count II
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Racial Discrimination & Retaliation)
### - Against Both Defendants -

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff seeks relief for the following adverse actions:

    (1) For being subjected to a hostile work environment;

    (2) For being denied promotions and/or pay increases;

    (3) For being given discipline, suspension, and/or job removals (prior to his ultimate termination); and

    (4) For being terminated from his employment.

40. Plaintiff properly exhausted his administrative remedies by timely filing his claims asserted herein with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within 90 days of receipt of a right-to-sue letter and/or case closure notice.

41. The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his concerns of racism (that he expressed numerous times) constitute violations of Title VII.

**Count III**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**(Racial Discrimination & Retaliation)**
**- Against Both Defendants -**

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff seeks relief for the following adverse actions:

   (1) For being subjected to a hostile work environment;

   (2) For being denied promotions and/or pay increases;

   (3) For being given discipline, suspension, and/or job removals (prior to his ultimate termination); and

   (4) For being terminated from his employment.

44. Plaintiff properly exhausted his administrative remedies by timely filing his claims asserted herein with the Equal Employment Opportunity Commission ("EEOC") and by dual filing his Charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff files claims under the PHRA after more than one (1) year have elapsed, satisfying administrative exhaustion requirements.

45. The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his concerns of racism (that he expressed numerous times) constitute violations the Pennsylvania Human Relations Act ("PHRA").

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

                                    Respectfully submitted,

                                    **KARPF, KARPF & CERUTTI, P.C.**

By:                        
                                  Ari R. Karpf, Esq. (91538)
                                  8 Interplex Drive, Suite 210
                                  Feasterville-Trevose, PA 19053
                                  215-639-0801 (P)
                                  215-639-4970 (F)
                                  akarpf@karpf-law.com

Dated: March 13, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Yahkee Wimberley | : | CIVIL ACTION |
| v. | : | |
| Remington Philly Employers, LLC, d/b/a Embassy Suites, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 3/13/2026 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Defendants place of business_

---

*RELATED CASE IF ANY:* Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?   Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WIMBERLEY, YAHKEE

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

### DEFENDANTS
REMINGTON PHILLY EMPLOYERS, LLC, D/B/A EMBASSY SUITES, ET AL.

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the Title VII (42USC2000), Section 1981 (42USC1981) and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 
- CHECK YES only if demanded in complaint: JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 3/13/2026　　SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT #　　AMOUNT　　APPLYING IFP　　JUDGE　　MAG. JUDGE